

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
12/30/2011

| | | |
|---|---|---|
| IN RE: | § | Case No. 10-35471 |
| PHILIP REED LIVELY, | § | Chapter 11 |
| Debtor(s). | § | Judge Isgur |

## MEMORANDUM OPINION

This Memorandum Opinion concerns whether the Bankruptcy Abuse and Consumer Protection Act of 2005 ("BAPCPA") abrogated the absolute priority rule for individual Chapter 11 cases. The Court holds that it did not.

### Factual Background

There are no material factual disputes. The sole issue is whether BAPCPA abrogated the absolute priority rule for individual Chapter 11 cases.

Philip Reed Lively initially filed a Chapter 13 bankruptcy petition. (ECF No. 1). The case was converted to a Chapter 11. (ECF No. 65). Lively filed his Amended Chapter 11 plan on August 19, 2011. (ECF No. 88). At the confirmation hearing, the Court preliminarily announced that it would deny confirmation of the plan for violating § 1129(b)(2)(B)(ii)—otherwise known as the absolute priority rule. The Court allowed briefing on the question of whether BAPCPA abrogated the absolute priority rule for individual chapter 11 cases. Lively filed a brief in support of his argument that it did. (ECF No. 104). Having considered the brief and applicable law, the Court now denies confirmation.

Lively's proposed chapter 11 plan provided for payment to his unsecured creditors of a forecast 7.38% distribution. Lively had forecast that his future income to be used to fund the plan would have come from his salary, his social security benefits, income from a mortgage note receivable, income from leasing nine railroad cars and a periodic payment from a recreational

boat consignment lot operated by his son. Lively's plan would allow him to retain ownership of the mortgage note receivable, the nine railroad car leases and his interest in the consignment lot.

The railroad car leases serve as collateral for a $234,000 bank loan. The plan proposes for Lively to retain the rail cars and retire the loan with payments over 15 years.

The mortgage note receivable serves as collateral for a $248,000 bank loan. The plan proposes for Lively to retain the mortgage note receivable and retire the loan with payments over the remaining term of the loan.

The recreational boat consignment lot is subject to a lease that will be assumed.

Lively estimates that he owes $731,000 in unsecured claims. These are to be partially paid, pro rata, over 5 years at the rate of $1,000.00 per month. Accordingly, holders of unsecured claims are being asked to lose approximately $670,000, while Lively retains ownership of all of his assets.

## Analysis

After careful analysis of Lively's brief, the Bankruptcy Code, and the relevant case law, the Court holds that BAPCPA did not abrogate the absolute priority rule for individual Chapter 11 cases.

Although no creditor objected to confirmation, the Court has a "mandatory independent duty" to determine whether the standards set forth in § 1129 of the Bankruptcy Code have been satisfied. *In re Williams,* 850 F.2d 250, 253 (5th Cir. 1988), quoting *In re Holthoff,* 58 B.R. 216, 218 (Bankr. E.D. Ark. 1985). For the reasons set forth in this opinion, the Court concludes that the requirements of neither § 1129(a) nor § 1129(b) have been met and that confirmation must be denied.

**Subsection 1129(b) ("Cram-Down") Necessary**

Although no creditor objected to confirmation,[1] 3 of the 4 holders of unsecured claims voted to reject the plan. Acceptance of a plan is determined by § 1126 of the Bankruptcy Code. Under that section, an impaired class of creditors accepts a plan only if it is approved by two-thirds in amount and a majority in number of the holders of claims who cast votes. 11 U.S.C. § 1126(c). Because three of the four votes rejected the plan, class 6 did not accept the plan. Accordingly, the plan did not meet the requirements of § 1129(a)(8) of the Bankruptcy Code. The plan, if it is to be confirmed, must meet the requirements of § 1129(b)—otherwise known as "cram-down."

**Subsection 1129(b) Requirements**

For a plan to be confirmed under § 1129(b), all § 1129(a) requirements must be met except § 1129(a)(8). In other words, not all impaired classes of claims or interests must accept the plan. Subsection 1129(b) allows confirmation of such a plan only if it "does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1).

The condition that a plan be "fair and equitable" with respect to an impaired dissenting class of unsecured creditors is further defined by § 1129(b)(2)(B):

> (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or
>
> (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is

---

[1] Because of the absence of an objection, Lively was not required to pay five years' worth of projected disposable income under the plan. *See* 11 U.S.C. § 1129(a)(15).

> an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of (a)(14) of this section.

11 U.S.C. § 1129(b)(2)(B).  Lively admits the plan does not provide for payments equal to the allowed amount of the claims of the impaired dissenting classes of unsecured creditors.  (ECF No. 104 at 1).  Therefore, the plan fails to satisfy § 1129(b)(2)(B)(i).  In order to be confirmed, the plan must satisfy § 1129(b)(2)(B)(ii).

**Absolute Priority Rule in Individual Chapter 11 Cases**

Prior to BAPCPA, § 1129(b)(2)(B)(ii) read:

> The holder of any claim or interest that is junior to the claims of such [impaired dissenting] class will not receive or retain under the plan on account of such junior claim or interest any property.

11 U.S.C. § 1129(b)(2)(B)(ii) (2003) (amended 2005).  This is commonly known as the absolute priority rule.  In individual Chapter 11 cases, the absolute priority rule prevents debtors from receiving or retaining any property under the plan unless claims of the impaired dissenting classes of unsecured creditors are paid in full.[2]

BAPCPA added additional language to § 1129(b)(2)(B)(ii):

> The holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, *except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14).*

11 U.S.C. § 1129(b)(2)(B)(ii) (emphasis added).[3]  The issue is how this new language affects the absolute priority rule for individual Chapter 11 cases.

---

[2] Individual debtors might be allowed to retain property under the plan even if the impaired dissenting classes of unsecured creditors are not paid in full if the individual debtors contribute new value, as they are not thereby retaining the property on account of a junior claim or interest.  This possibility is not at issue in this case.

[3] Some courts have argued that the reference to (a)(14) is a scrivener's error and that therefore the exception is actually subject to the requirements of subsection (a)(15).  *See In re Shat*, 424 B.R. 854, 860 n.21 (Bankr. D. Nev. 2010).  The Court believes that Congress may have intended to reference (a)(15).  The reference to (a)(14), however, "is not entirely absurd . . . . One could easily assume that Congress wished to protect domestic support creditors by

4

**BAPCPA's Structural Changes to Individual Chapter 11 Cases**

BAPCPA added provisions that significantly alter the structure for individual Chapter 11 cases. Most importantly, § 1115 adds additional property to the estate:

> (a) In a case in which the debtor is an individual, property of the estate includes, in addition to all of the property specified in section 541—
>
> (1) all property of the kind specified in section 541 that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first; and
>
> (2) earnings from services performed by the debtor after commencement but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first.

11 U.S.C. § 1115. Were it not for § 1115(a)(2), money earned by the debtor for services performed *after* the commencement of the case would not otherwise be estate property. *See* 11 U.S.C. § 541(a)(6).

**Interpreting "Included in the Estate Under Section 1115"**

There is a split of authority regarding the proper interpretation of the phrase "included in the estate under section 1115." The issue is important because § 1129(b)(2)(B)(ii) excepts property "included in the estate under section 1115" from the absolute priority rule in individual chapter 11 cases. The majority interprets this language to mean property *added* to the estate by § 1115. *See, e.g.*, *In re Borton*, 2011 WL 5439287 (Bankr. D. Idaho Nov. 9, 2011); *In re Kamell*, 451 B.R. 505 (Bankr. C.D. Cal. 2011); *In re Maharaj*, 449 B.R. 484 (Bankr. E.D. Va. 2011). This is known as the "narrow" interpretation. The result of this interpretation is that the exception applies to income received by the debtor for postpetition services, but not to assets owned as of the petition date. The minority interprets the language much more broadly. *See,*

---

not allowing a debtor to keep any postpetition earnings—a form of Section 1115 property—so long as any domestic support obligation was not current." *Id.* at 861 n.21. Therefore, the Court may not correct the scrivener's error. The exception is subject to the requirements of (a)(14).

*e.g.*, *In re Shat*, 424 B.R. 854 (Bankr. D. Nev. 2010); *In re Johnson*, 402 B.R. 851 (Bankr. N.D. Ind. 2009); *In re Roedemeier*, 374 B.R. 264 (Bankr. D. Neb. 2007). These courts view § 1115 as supplanting § 541, meaning that § 1115 actually defines property of the estate in individual chapter 11 cases instead of merely adding property to the estate as defined by § 541. As § 1115 supplants § 541, the argument goes, property "included in the estate under section 1115" in fact references the *entire* estate. This is referred to as the "broad" interpretation. The result is an exception for all property of the estate in individual Chapter 11 cases.

Lively argues for the "broad" interpretation. The leading case adopting the "broad" interpretation is *In re Shat*. 424 B.R. 854 (Bankr. D. Nev. 2010). This opinion will therefore address *Shat* and explain how the Court arrived at the opposite conclusion of Lively and the *Shat* court.

**Language Unambiguous**

*Shat* views § 1129(b)(2)(B)(ii) as ambiguous.[4]  424 B.R. at 863 ("[The extent of the BAPCPA changes] depends on what the meaning of the ambiguous phrase in Section 1129(b)(2)(B)(ii) that an individual debtor may retain property 'included in the estate under section 1115.'") (internal citations omitted).

The Court finds the phrase "included in the estate under section 1115" unambiguous. It means property *added* to the estate by § 1115. If a text is unambiguous on its face, does not produce absurd results, and fits coherently into the statute's overarching structure, the statutory interpretation exercise is complete. *See Lamie v. United States Trustee*, 540 U.S. 526 (2000); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989) (As "long as the statutory

---

[4] It appears Lively views the language as unambiguously abrogating the absolute priority rule for individual chapter 11 cases. (ECF No. 104 at 6) ("In plain language, the new exception in § 1129(b)(2)(B)(ii) provides that an individual debtor in Chapter 11 may retain property that is included within the definition of property of the estate in § 1115."). The Court disagrees.

scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute."). The Court nevertheless alternatively addresses the crucial argument put forth by Lively and discussed in *Shat*.

**A "Trivial" Exception?**

If the text is ambiguous it means there are at least two superficially plausible interpretations of "included in the estate under section 1115." It could either mean property added to the estate by § 1115 or all property referenced by § 1115—that is, the entire estate. A key argument put forth by Lively,[5] and often mentioned in cases adopting the "broad" interpretation,[6] is that the "narrow" interpretation renders the exception trivial. The implication is that the more trivial the exception, the less likely it was Congress' true intention—thereby supporting the "broad interpretation." This Court disagrees that the exception is trivial.[7]

The reason is that, even if the requirements of § 1129(a)(15) are triggered,[8] which they are not in Lively's case, debtors still have the ability to retain property earned during the first

---

[5] Lively argues: "The narrow interpretation also leads to a result and a statute that don't mean very much. . . . What good does it do a debtor to be able to retain postpetition income and property if the postpetition income and property is going to be distributed to creditors for five years?" (ECF No. 104 at 4).

[6] "The broader view also saves Section 1129(b)(2)(B)(ii) from an almost trivial reading; if the narrow view is taken, the section protects only the value of aggregate postpetition earnings payable after the fifth anniversary of plan confirmation." *In re Shat*, 424 B.R. at 868. "These considerations indicate the narrow reading of the new exception in § 1129(b)(2)(B)(ii) would have little impact on this Debtor's (and probably most other individual debtors') ability to reorganize in Chapter 11." *In re Roedemeieur*, 374 B.R. 264 (Bankr. D. Kan. 2007).

[7] Even if the exception were trivial, the Court would have to follow the plain meaning of the text as long as the results are not absurd and the text fits coherently and consistently into the statute's overarching structure. *See Lamie v. United States Trustee*, 540 U.S. 526 (2000); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989) (As "long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute."). It is not clear to this Court that a trivial exception would necessarily be incoherent and inconsistent with the statute's overarching structure.

[8] Once the holder of an allowed secured claim objects to confirmation, section 1129(a)(15) requires a plan to either pay such holder's claim in full or distribute a total value of not less than five years' worth of the debtor's projected disposable income.

five years of the plan by either economizing or increasing their actual earned income. Take the following, routine, hypothetical:

- A married couple files a joint Chapter 11 petition.

- At confirmation the debtors are making two separate $700 monthly car payments to secured creditors. The plan is confirmed with the two car payments.

- One year into the plan, the debtors trade these cars for less expensive cars requiring payments of only $400 per month each.

BAPCPA's § 1129(b)(2)(B)(ii)'s exception allows the debtors to retain the savings on the cars. Under § 1325(b)(2) as incorporated by § 1129(a)(15), the $1,400.00 in car payments would have served to reduce the debtors' projected disposable income. Nevertheless, the trade-in of the cars would allow the debtors' actual disposable income to be supplemented by a $600.00 per month saving without any corresponding increase in projected disposable income—which is determined as of the petition date. Over the remaining four years of the plan, the total amount retained by the debtors would be $28,800.[9]

The debtors' actual income might increase during the plan as well—perhaps if one of the debtors received a raise or decided to work fifty hours per week instead of forty. Because debtors' projected disposable income, and monthly payments to secured creditors, were calculated based on circumstances at the beginning of the plan, the resulting difference is an amount the debtors may retain because of the exclusion contained in § 1129(b)(2)(B)(ii).[10]

---

[9] The total savings per month is $600 ($300 for both cars). There are 48 months left in the first five years of the plan. Forty-eight times $600 equals $28,800.

[10] It is true that a creditor could attempt to modify the plan under 11 U.S.C. § 1127(e). However, a court would not necessarily approve the modification. Regarding the trade-in, a modification would have the perverse result of punishing debtors for economizing. As to the example of a debtor deciding to work more hours, a debtor might return to the regular normal number of hours if the only result of the greater effort is an increased payout to creditors.

**Conclusion**

The starting point for any exercise in statutory interpretation is the statute's plain language. *Lamie v. United States Trustee*, 540 U.S. 526 (2000). As "long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989).

The statutory scheme is coherent and consistent. The exception fits coherently into an overall statutory scheme that continues to allow individuals to reorganize under Chapter 11, while adding the possibility that the plan be required to distribute a minimum of five years' worth of the debtor's projected disposable income.

BAPCPA did not abrogate the absolute priority rule for individual Chapter 11 cases. The Court will issue a separate Order denying confirmation of the plan.

SIGNED **December 30, 2011.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE